UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DEAN CHAUVIN**  CIVIL ACTION

**VERSUS**  NO: 22-3673

**TERMINIX PEST CONTROL, INC.**  SECTION "H"

## ORDER AND REASONS

Before the Court is Defendant Terminix Pest Control's Motion to Dismiss for Failure to State a Claim (Doc. 11). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This case arises out of Plaintiff Dean Chauvin's termination from his employment with Defendant Terminix Pest Control, Inc. In August 2021, Defendant issued a notice to all employees that they must receive the COVID-19 vaccine as an ongoing condition of employment. This notice had an exception for "a disability verified by a physician that prevents you from taking the vaccine."[1] Plaintiff told Defendant he had "a documented case of Bell's Palsy after receiving a flu shot a few years prior – and that, as a result, he could not give Informed Consent to take the [Emergency Use Authorization] Covid injection due to fear of adverse events in light of his past experience with the

---

[1] Doc. 10 at 6.

1

flu shot."[2] Plaintiff refused to receive the COVID-19 vaccination and was fired on September 15, 2021.[3]

On March 12, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act ("ADA"). He received a Notice of Right to Sue Letter on July 28, 2022. Plaintiff filed suit in this Court on October 5, 2022, alleging violations of the Emergency Use Authorization Provision,[4] the ADA,[5] and the Louisiana Employment Discrimination Law ("LEDL").[6]

This Court granted Defendant's first Motion to Dismiss, holding that Plaintiff did not adequately plead his claims. Plaintiff subsequently filed an Amended Complaint pursuant to the Court's Order and Reasons, bringing various claims under the ADA, asserting that the Louisiana at-will employment doctrine is preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), wrongful termination, retaliation, breach of contract, and violations of the LEDL. Now before the Court is Defendant's second Motion to Dismiss Plaintiff's Claims with Prejudice. Plaintiff opposes.[7]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[8] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the

---

[2] *Id.* at 6–7.
[3] *Id.* at 7.
[4] 21 U.S.C. § 360bbb-3.
[5] 42 U.S.C. § 12101.
[6] LA. REV. STAT. § 23:301.
[7] Doc. 12.
[8] Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

reasonable inference that the defendant is liable for the misconduct alleged."[9] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[10] The Court need not, however, accept as true legal conclusions couched as factual allegations.[11]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[12] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.[13] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[14]

## LAW AND ANALYSIS

Defendant argues that Plaintiff fails to establish any viable cause of action under the ADA. Defendant further argues that without his various ADA claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Plaintiff responds that the Court has original jurisdiction over his state law claims because the PREP Act preempts Louisiana's at-will employment doctrine. The Court will address each contention individually.

### a. Americans With Disabilities Act

Defendant argues that Plaintiff did not plausibly allege a violation of the ADA under any theory. Plaintiff asserts various claims under the ADA, namely

---

[9] *Id.*
[10] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[11] *Iqbal*, 556 U.S. at 667.
[12] *Id.*
[13] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[14] *Lormand*, 565 F.3d at 255–57.

3

(1) "Disability and Failure to Accommodate," (2) "Unlawful Medical Examination or Inquiry," and (3) "Regarded Disabled."[15]

"The ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment."[16] "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."[17] The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[18] Plaintiff alleges he is disabled under subsections (A) and (C) because he has a physical impairment that limits his ability to work anywhere that requires a COVID-19 vaccine, and because Defendant regarded him as having a physical impairment.

As Plaintiff's Count One "Disability and Failure to Accommodate" and Count Three "Regarded Disabled" claims both require Plaintiff to prove he has a disability as defined by the ADA, the Court will address these claims first.

### i. *Disability and Failure to Accommodate*

In Count One, Plaintiff alleges that "because Plaintiff had already had an adverse event from a prior flu shot, Plaintiff does not possess the physical ability to safely receive an [Emergency Use Authorization] Covid injection . . .

---

[15] Doc. 10.
[16] Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017) (quoting Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original)).
[17] *Id.* (quoting E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999))).
[18] 42 U.S.C. § 12102(a).

."[19] Plaintiff proceeds to explain that this results in a "physical impairment that substantially limits the major life activity of 'working' in any job where the employer requires its employees to receive an [Emergency Use Authorization] Covid injection."[20] A disability is defined by the ADA as a physical impairment that substantially limits a major life activity. Major life activities include working, seeing, hearing, speaking, and breathing.[21] "Substantially limits" in the context of working as a major life activity "means [that the employee is] significantly restricted in [their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."[22] "[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."[23]

The Court has difficulty ascertaining Plaintiff's alleged disability. Plaintiff claims that his disability is a documented case of Bell's Palsy after receiving a flu shot a few years prior. He then explains that he is physically unable to receive the COVID-19 vaccine due to fear of adverse events in light of his past experience with the flu shot, which in turn precludes him from working for any employer that requires a COVID-19 vaccination. Plaintiff alleges that his treating physician wrote a letter, advising that Plaintiff "cannot receive the COVID vaccine, the risk, side effects and health of the patient outweigh the good in getting the vaccine."[24]

---

[19] Doc. 10 at 9.
[20] *Id.* at 10.
[21] 42 U.S.C. § 12102(2)(A).
[22] Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) (citing 29 C.F.R. § 1630.2(j)(3)(i))
[23] *Id.*
[24] Doc. 10 at 7.

5

In its previous Order and Reasons, the Court held that the inability to receive certain medications and vaccinations is not a major life activity within the ADA.[25] Plaintiff's argument now appears to have morphed into a more attenuated chain of causation wherein his past experience with the flu shot renders him unable to take certain medications and vaccines, which then prohibits him from working for any employer whose company policy requires those medications and vaccinations. However, the intervening event of choosing not to receive a COVID-19 vaccine is what renders Plaintiff unable to do his job, not his documented case of Bell's Palsy after receiving the flu vaccine years ago.[26] The Court does not find Plaintiff's workaround compelling and reiterates that it does not consider taking certain medications and vaccines a major life activity akin to seeing, hearing, speaking, or breathing.[27]

While some courts have held that Bell's Palsy coupled with a permanent side effect is a disability under the ADA,[28] Plaintiff's assertion that his prior

---

[25] Doc. 9 at 6.

[26] Speaks v. Health Sys. Mgmt., Inc., No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal choice . . . that, while hers to make in this context, cannot be considered an impairment under the ADA.").

[27] Plaintiff filed a Supplemental Memorandum with this Court, asking it to adopt the holding of a Pennsylvania District Court that "[m]edical conditions that prevented Plaintiffs from receiving the Covid-19 vaccine fit within [the ADA's] definition of impairment." Doc. 15 (citing Doe(s) v. Pittsburgh Reg. Transit, No. 2:22-cv-01736, 2023 WL 4867850 (W.D. Penn. July 31, 2023)). *Doe(s)* is not binding on this Court. This Court finds the facts of the disability in *Doe(s)* distinguishable and does not find its rationale otherwise persuasive. In *Doe(s)*, the court analyzed the severity of plaintiffs' anaphylaxis, finding that a "permanent, chronic, and severe allergy" can be a "physical or mental impairment" preventing plaintiffs from getting the COVID-19 vaccine. The court then concludes, as does Plaintiff, that the plaintiffs sufficiently pled their disability, without bridging the logical gap and explaining how the medical condition itself prevents Plaintiffs from the major life activity of working. *See Doe(s)*, 2023 WL 4867850, at *6 ("[T]he allegations . . . support a reasonable inference that the Plaintiffs were not able to get the Covid-9 [vaccine] because of a 'physical or mental impairment.'").

[28] *See, e.g.*, Milam v. ASCAP, No. 3:23-cv-00238, 2023 WL 5673953, at *6–7 (M.D. Tenn. Sept. 1, 2023) (holding that, where a plaintiff alleged that he suffered from Bell's Palsy and permanent hearing loss, the permanent hearing loss was a sufficiently pled disability

6

documented case of Bell's Palsy years ago impacts his ability to receive a vaccine is much different. Plaintiff's Amended Complaint describes his Bell's Palsy as a "prior adverse event," or "past experience," and alleges no present or permanent side effect that substantially limits his ability to perform a class or broad range of jobs. The only *present* impairment that Plaintiff pleads is "fear of adverse events," which is not a physical impairment under the ADA.[29] As the Court finds that Plaintiff has not adequately pleaded a disability under the ADA, the first element of a failure to accommodate claim, Plaintiff's first claim is dismissed.[30]

## ii. Regarded Disabled

Plaintiff's third claim alleges Defendant regarded him as disabled because (1) "he had the medical status of being unvaccinated," and (2) Defendant considers him to be "at a higher risk of becoming infected with and transmitting COVID-19."[31] Defendant moves to dismiss this claim arguing that the Amended Complaint fails to show that Defendant linked Plaintiff's refusal

---

under the ADA); Thurman v. City of Frankfort, No. 3:21-cv-00013-GFVT, 2022 WL 701009, at *3 (E.D. Ky. Mar. 8, 2022) (holding that the side-effect of Bell's Palsy which has "rendered him paralyzed with a permanent 'smirk on his face'" is a sufficiently pled disability under the ADA). *Cf.* Landers v. Nat'l R.R. Passenger, Corp., d/b/a/ Amtrak, 2001 WL 1690061, at *4 (D. Minn. Dec. 28, 2001) (finding, in looking to the ADA for guidance that the plaintiff was not disabled under the Minnesota Human Rights Act at the time of his termination—one year after the onset of his Bell's Palsy—because he provided *no other evidence* of disability at the time of termination).

[29] In determining whether an alleged impairment substantially limits a major life activity, courts must consider "(1) the nature and severity of the impairment, (2) its duration or expected duration, [and] (3) its permanent or expected permanent long-term impact." U.S. E.E.O.C. v. SFAILA, LLC, 666 F. Supp. 2d 637, 646 (E.D. La. 2009) (citing 29 C.F.R. § 1630.2(j)). Plaintiff wholly fails to plead any present, permanent, or long-term impairment.

[30] Bright v. Martin, No. 22-30767, 2023 WL 4044437, at *1 (5th Cir. June 15, 2023) ("To prevail on a failure-to-accommodate claim, the plaintiff must show '(1) [he] is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.'").

[31] Doc. 10 at 17–18.

7

to receive the vaccine to a physical or mental impairment and acted in a discriminatory manner based on that perceived impairment.[32]

To meet the standard of being a person regarded as having a disability under 29 C.F.R. § 1630.2(iii), "a plaintiff must show either that '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'"[33] Both of these "require that the plaintiff demonstrate that the employer actually 'entertain[ed] misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'"[34]

The Court finds that Defendant did not regard Plaintiff as disabled by instituting a blanket vaccination policy. Defendant circulated an interoffice memo that required *all* of its employees to abide by the new vaccination policy.[35] By doing so, Defendant regarded Plaintiff, and all other employees, as being required to comply with its company policy. Various other courts have dismissed ADA discrimination suits wherein Plaintiffs alleged that their employers regarded them as disabled by enforcing COVID-19 vaccination policies.[36] One court noted that misclassifying an employee as having a

---

[32] Doc. 11-2 at 5–6.
[33] Kemp v. Holder, 610 F.3d 231, 237 (5th Cir. 2010) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999) (overturned on other grounds)).
[34] *Id.* (quoting *Sutton*, 527 U.S. at 489).
[35] *Id.*
[36] *See* Sharikov v. Philips Med. Sys. MR, Inc., No. 122-326, 2023 WL 2390360, at *8 (N.D.N.Y. Mar. 7, 2023) ("The allegation that Defendant perceived Plaintiff as *potentially* infectious fails to plausibly allege a claim that the . . . Defendant regarded Plaintiff as having an impairment); *Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an "impairment" of any sort. Rather, it reflects a personal choice by [the plaintiff] that, while hers to make in this context, cannot be considered an impairment

8

disability due to a failure to comply with a vaccination policy would "require inferring that [the employer] misclassified all of its . . . employees as having a disability. Such an inference is not reasonable."[37] Accordingly, Plaintiff has not plausibly alleged that Defendant regarded him as having a disability. Plaintiff's third claim that his employment was terminated because he was regarded as disabled also fails.

### iii. *Unlawful Medical Examination*

Plaintiff's second claim under the ADA for an unlawful medical inquiry alleges that Defendant made various unlawful medical inquiries, namely (1) inquiring into Plaintiff's vaccination status, and (2) requiring Plaintiff to submit proof he had been vaccinated. As the Fifth Circuit has held that a plaintiff "need not assert that he or she has a disability to contest an allegedly improper medical inquiry or medical examination," Plaintiff's medical inquiry claims under the ADA are not precluded by his failure to adequately plead a disability under the ADA.[38]

Under Title I of the ADA, employers cannot require medical examinations of make medical inquiries into the potential existence of an

---

under the ADA"); Gallo v. Wash. Nat'ls Baseball Club, LLC, 2023 WL 2455678 (D.D.C. Mar. 10, 2023) ("The 'regarded as having' prong of the ADA's definition of disability 'does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.'"); Applegate v. St. Vincent Health, Inc., 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023) ("Plaintiffs' unvaccinated status cannot plausibly support a claim that Defendants regarded them as disabled under the ADA."); Shklyar v. Carboline Co., 616 F. Supp. 3d 920, 926 (E.D. Mo. 2022), *aff'd* 2023 WL 1487782 (8th Cir. Feb. 3, 2023); Jorgenson v. Conduent Transp. Sols., Inc., No. 22-cv-1648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (dismissing a plaintiff's "regarded as" ADA claim because requiring employees to attest to their vaccination status "does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); Earl v. Good Samaritan Hosp. of Suffern, No. 20-cv-3119, 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (finding that the plaintiff "failed to plausibly allege that [his employer] perceived him to be disabled based on his potential to infect patients with COVID-19" because the "perception of infectiousness is not the same as perceived disability").

[37] *Shklyar*, 616 F. Supp. 3d at 926.
[38] Taylor v. City of Shreveport, 798 F.3d 276, 284 (5th Cir. 2015).

9

employee's disability or to the nature or severity of an employee's disability.[39] The provision that Plaintiff is suing under, 42 U.S.C. § 12112(d)(4)(A), states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

The ADA definition of a disability, discussed above, includes "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." To establish a claim for an unlawful medical examination or inquiry under Section 12112(d), a claimant must show (1) that their "employer obtained the medical information that was disclosed through [a medical examination] or disability-related inquiry;"[40] and (2) that they "suffered a tangible injury due to the disclosure of the protected medical information."[41]

Inquiring into whether Plaintiff was vaccinated and requiring him to submit proof that he was vaccinated do not fit this statutory definition. Defendant was not inquiring into the nature or severity of a disability or inquiring whether Plaintiff was a person with a disability. The Court notes that while the Equal Employment Opportunity Commission's ("EEOC") webpage is not binding law, it finds the EEOC's guidance instructive. The EEOC specifically stated that inquiring into COVID-19 vaccination status is

---

[39] 42 U.S.C.A. § 12112.
[40] Franklin v. City of Slidell, 936 F. Supp. 2d 691, 711 (E.D. La. 2013) (citing Dean v. City of New Orelans, No. 11-2209, 2012 WL 2564954, at *20 (E.D. La. July 2, 2012), *aff'd*, 544 F. App'x 353 (5th Cir. 2013)).
[41] *Id.* (citing *Dean*, 2012 WL 2564954, at *21).

10

not a medical inquiry under the ADA.[42] This type of conduct does not implicate any disability and is not prohibited by the ADA. Additionally, many other courts have held that inquiries into vaccination status and requiring proof of vaccination status are not medical inquiries under the ADA.[43] This Court agrees. Therefore, Plaintiff's medical inquiry claims under the ADA as to the inquiries into his vaccination status and proof of vaccination must be dismissed.

### b. *Preemption of Plaintiff's State Law Claims*

Having dismissed all of Plaintiff's federal claims, Defendant now requests this Court decline to exercise supplemental jurisdiction over

---

[42] U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (last accessed July 18, 2023, 11:42 AM), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. The EEOC specifically stated that "[w]hen an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability. Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply."

[43] Balow v. Olmsted Med. Ctr., No. CV 22-1668 ADM/JFD, 2023 WL 2776028, at *6 (D. Minn. Apr. 4, 2023) (holding that a vaccine is not a procedure that seeks information about Plaintiffs' health and is not an inquiry into whether Plaintiffs have a disability); Bobnar v. AstraZeneca, No. 1:22-CV-02258, 2023 WL 3340466, at *4 (N.D. Ohio May 9, 2023) (holding that inquiries into an employee's vaccination status does not constitute an unlawful medical inquiry and stating that "[t]he EEOC expressly advised that an employer's COVID-19 vaccination status is not a prohibited medical inquiry under the ADA."); Friend v. AstraZeneca Pharms. LP, No. CV SAG-22-03308, 2023 WL 3390820, at *5 (D. Md. May 11, 2023) (holding that "an inquiry about vaccination status does not implicate any disability."); Bearbower v. Olmsted Med. Ctr., No. CV 22-2459 ADM/JFD, 2023 WL 2776029, at *6 (D. Minn. Apr. 4, 2023); Kehren v. Olmsted Med. Ctr., No. CV 22-1560 ADM/JFD, 2023 WL 2776094, at *6 (D. Minn. Apr. 4, 2023); Tipcke v. Olmsted Med. Ctr., No. CV 22-2470 ADM/JFD, 2023 WL 2776098, at *6 (D. Minn. Apr. 4, 2023); Aronson v. Olmsted Med. Ctr., No. CV 22-1594 ADM/JFD, 2023 WL 2776095, at *6 (D. Minn. Apr. 4, 2023) ("this requirement is not an unlawful inquiry under the ADA because inquiring about an employee's vaccination status is not likely to elicit information about a disability."); Librandi v. Alexion Pharms., Inc., No. 3:22CV1126(MPS), 2023 WL 3993741, at *9 (D. Conn. June 14, 2023).

Plaintiff's state law claims. Plaintiff, however, argues the Public Readiness and Emergency Preparedness Act (the "PREP Act") preempts the Louisiana at-will employment doctrine and gives this Court original jurisdiction over all his state law claims.

Essentially Plaintiff argues that his state law claims "arise under" federal law.[44] "The notion that state-law claims can 'arise under' federal law is not intuitive. State questions are not federal questions."[45] There is a narrow exception to this rule, however. "[C]omplete preemption is the exception to the well-pleaded complaint rule."[46] "The 'complete preemption doctrine' provides that the preemptive force of a federal statute can be 'so extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"[47] "If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."[48] Therefore, "[i]f a federal law is found to completely preempt a field of state law, the state-law claims in the plaintiff's complaint will be recharacterized as stating a federal cause of action."[49]

To trigger complete preemption in the Fifth Circuit, Plaintiff must show that "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of

---

[44] 28 U.S.C. § 1331.
[45] Manyweather v. Woodlawn Manor, Inc., 40 F.4th 237, 242 (5th Cir. 2022).
[46] Rio Grande Underwriters, Inc. v. Pitts Farms, Inc., 276 F.3d 683, 685 (5th Cir. 2001) (citing Hart v. Bayer Corp., 199 F.3d 239, 244 (5th Cir. 2000)).
[47] Elliot v. Care Inn of Edna LLC, No. 3:20-CV-3185-S, 2021 WL 2688600, at *3 (N.D. Tex. June 30, 2021) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 389 (1987)).
[48] Caterpillar, 482 U.S. at 393 (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983)); see also Ben. Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).
[49] Rio Grande, 276 F.3d at 685 (quoting Hart, 199 F.3d at 244).

the right; and (3) there is a clear Congressional intent that claims brought under the federal law be removable."[50]

The statute in question is the PREP Act. The Fifth Circuit has described the PREP Act as "shield[ing] covered persons, 'such as pharmacies and drug manufacturers,' from suits and liability 'during a public-health emergency.'"[51] "The PREP Act's liability shields only to the administration . . . or the use of those covered countermeasures," such as "vaccines and treatments."[52] "The PREP Act is, at its core, an immunity statute. It does not create a federal cause of action or any rights, duties, or obligations."[53] Under different facts, the Fifth Circuit has held that the PREP Act fails to satisfy this test.[54]

As to the first element, the PREP Act does not provide a cause of action that "replaces and protects the analogous area of state law."[55] It creates a narrow cause of action for willful misconduct.[56] Plaintiff asserts claims for

---

[50] *Elliot*, 2021 WL 2688600, at *3 (quoting Gutierrez v. Flores, 543 F.3d 248, 252 (5th Cir. 2008)).

[51] *Manyweather*, 40 F.4th at 243 (quoting Est. of Maglioli v. All. HC Holdings, LLC, 16 F.4th 393, 400 (3d Cir. 2021)).

[52] *Id.* (quoting 42 U.S.C. § 247d-6d(a)(1)) (internal quotations omitted).

[53] *Elliot*, WL 2688600 at *3.

[54] *Elliot*, 2021 WL 2688600, at *3 ("The PREP Act does not completely preempt state law negligence claims for COVID-19-related injuries, as it fails to satisfy all three prongs of the Fifth Circuit's test for complete preemption."); *Manyweather*, 40 F.4th at 242 ("We already have decided that the PREP Act does not preempt state-law negligence claims.") Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) ("The Act does not completely preempt Mitchell's state-law negligence claims."). These Fifth Circuit cases address the PREP Act's preemption as it pertains to the preemption of state law negligence claims, however, the discussion of the elements of complete preemption is useful regardless.

[55] *Johnson*, 214 F.3d at 632.

[56] 42 U.S.C. § 247d-6e(d)(1) (the statute defines willful misconduct as "an act or omission that is taken-- (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."). Plaintiff does not appear to allege a willful misconduct claim. To the extent the Court may construe his allegations as doing so, he does not adequately plead the elements. The willful misconduct exception is procedurally narrow and requires plaintiffs to satisfy strict standards of pleading and proof, as well as showing clear and convincing evidence of "willful misconduct which caused

13

wrongful termination, retaliation, and breach of contract, which are not subsumed and replaced by a cause of action for willful misconduct. Nor is the compensation fund created by the PREP Act a cause of action.[57] As a result, Plaintiff is unable to identify a cause of action that replaces his asserted state law claims.[58]

Even assuming that the PREP Act does create a cause of action, the other elements are not met. The second element, that the act specifically grants federal courts jurisdiction to enforce the right, is also not met. The PREP Act specifically gives jurisdiction to the Secretary of the Department of Health and Human Services to administer the compensation fund.[59] Claims for willful misconduct, when permitted, can be brought in the United States District Court for the District of Columbia after the plaintiff exhausts all administrative remedies.[60] "Thus, except for one narrow exception, PREP Act claims cannot be brought in federal court."[61] Plaintiff cannot show that the PREP Act satisfies the second prong.

Finally, there is not a clear congressional intent that the prescribed remedies be exclusive. The PREP Act does not create a general cause of action or specifically grant federal courts jurisdiction to adjudicate such actions, evincing a lack of congressional intent that the remedies provided be exclusive.

---

death or serious physical injury." § 247d-6d(c)(3). Plaintiff cannot meet these strict requirements.

[57] *Manyweather*, 40 F.4th at 242 (5th Cir. 2022) (stating that even if the PREP Act's compensation fund was a cause of action, which it was not, Congress denied the courts power to review how the Secretary administers the compensation fun, which necessarily precludes complete preemption); Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 586 (5th Cir. 2022) ("To begin, a 'compensation fund is not a cause of action.'").

[58] Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580, 587 (5th Cir. 2022) ("As the Third Circuit noted, 'neither the Supreme Court nor any circuit court has extended complete preemption to a statute because it created a compensation fund.'").

[59] 42 U.S.C. §§ 247d-6e(a), 247d-6e(b).

[60] *Elliot*, 2021 WL 2688600, at *4.

[61] *Id.*

14

Various other courts have similarly held that the PREP Act fails to completely preempt state law, and this Court agrees.[62] As a result, the Court does not have original jurisdiction over Plaintiff's state law wrongful termination, retaliation, and breach of contract claims. This Court's jurisdiction over Plaintiff's state law claims is supplemental.

### c. *State Law Claims*

After addressing Plaintiff's preemption argument, the Court must now determine whether to exercise supplemental jurisdiction over the remaining state law claims as it has dismissed all other claims over which it had original jurisdiction. Defendant requests that this Court decline to exercise supplemental jurisdiction over Plaintiff's retaliation, wrongful termination, breach of contract, and LEDL claims. Plaintiff does not address this argument.[63]

---

[62] *Elliot*, 2021 WL 2688600, at *4 (citing *Schuster*, 493 F. Supp. 3d at 536-38; Brannon v. J. Ori, LLC, 2:21-CV-00058-JRG-RSP, 2021 WL 2339196, at *2 (E.D. Tex. June 8, 2021); Gibbs on behalf of Estate of Velasquez v. Se. SNF LLC, SA-20-CV-01333-JKP-RBF, 2021 WL 1186626, at *3 (W.D. Tex. Mar. 30, 2021); Anson v. HCP Prairie Vill. KS OpCo LLC, No. 20-CV-2346 (DDC) (JPO), 2021 WL 308156, at *9-11 (D. Kan. Jan. 29, 2021); Estate of Smith ex rel. Smith v. The Bristol at Tampa Bay Rehab. & Nursing Ctr., No. 20-CV-2798 (T), 2021 WL 100376, at *1-2 (M.D. Fla. Jan. 12, 2021); Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 20-CV-1198, 2020 WL 6140474, at *7-8 (W.D. Pa. Oct. 16, 2020); Saldana v. Glenhaven Healthcare LLC, No. 20-CV-5631 (FMO) (MAA), 2020 WL 6713995, at *2 (C.D. Cal. Oct. 14, 2020); Estate of Maglioli v. Andover Subacute Rehab. Ctr. I, 478 F. Supp. 3d. 518, 528-33 (D.N.J. 2020)).

[63] In its previous Order and Reasons, the Court dismissed Plaintiff's retaliation claim as it could not ascertain whether he was suing under federal or state employment law. Doc. 9 at 6 ("As the Court cannot ascertain under which law the Plaintiff is suing and thus, what the requisite elements are, he did not state a claim upon which relief can be granted."). The Court granted Plaintiff leave to amend his complaint. Plaintiff failed to clarify whether he was suing under federal or state employment law. As Plaintiff grouped his retaliation claim with his other state law claims in his Amended Complaint and in his opposition to this Motion, the Court assumes that Plaintiff intended his retaliation claim to arise under state law and has treated it as such. Doc. 12 at 15 (listing and addressing wrongful termination, retaliation, and breach of contract together). To the extent Plaintiff may argue he attempted to plead retaliation under the ADA, it is dismissed for failure to plead the requisite elements of a retaliation claim under federal law.

15

Under 28 U.S.C. § 1367(c), district courts have discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims. "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."[64] The Fifth Circuit has advised that in determining whether to relinquish jurisdiction over pendent state law claims, a court should "look to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity."[65] The statutory factors concern whether "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction."[66]

Here, the statutory factors weigh in favor of dismissing Plaintiff's state law claims. Specifically, the second and third factors weigh heavily in favor of declining to exercise supplemental jurisdiction because only state law claims remain pending before this Court. The first factor also weighs against exercising jurisdiction as Plaintiff's claim may raise novel issues of law regarding employment rights in the face of vaccine mandates. Additionally, judicial economy, convenience, fairness, and comity all weigh in favor of declining jurisdiction as this claim has not been substantially litigated in this Court and Louisiana state courts have a significant interest in resolving issues of state law. As both the statutory and common law factors weigh against

---

[64] Brookshire Bros. Holding v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009); *see also* Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir.), *cert. denied*, 516 U.S. 818 (1995) (district court did not abuse discretion by remanding remaining state claims).
[65] Enochs v. Lampasas Cnty., 641 F.3d 155, 158–59 (5th Cir. 2011).
[66] 28 U.S.C. § 1367(c).

exercising supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction and dismisses Plaintiff's state law claims without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion (Doc. 11) is **GRANTED**. Plaintiff's ADA and PREP Act claims are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana this 15th day of November, 2023.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**